UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JESSE E. WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10CV678 TIA |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court under 42 U.S.C. §§ 405(g) for judicial review of the denial of Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On October 17, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning March 12, 2006 due to heart disease with valve replacement and hypertension. (Tr. 51, 87-91) Plaintiff's application was denied on December 21, 2006, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 47, 51-57) On September 12, 2008, Plaintiff appeared and testified at a hearing before an ALJ. (Tr. 20-46) In a decision dated October 7, 2008, the ALJ determined that Plaintiff had not been under a disability from March 12, 2006 through the date of the decision. (Tr. 14-19) On February 23, 2010, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel.  Upon examination by the ALJ, Plaintiff testified that he was 59 years old with associates degrees in electrical engineering and health and safety with OSHA certification.  Plaintiff lived in a home with his wife.  He weighed 280 pounds and measured 6 feet tall.  Plaintiff last worked in 2006 as a counselor.  He only worked for about a week after trying to resume work after his surgery.  Prior to that, Plaintiff worked for Chrysler for 39 years, first on an assembly line and then as an electrician.  Chrysler chose him to attend electrical engineering school.  The union then appointed him as a health and safety specialist, and Chrysler again sent him to school.  As an electrician, Plaintiff performed general factory construction work.  He later became a control room operator for the Chrysler plant.  Plaintiff received a $70,000 union negotiated package after he left the company.  He did not work for Chrysler after March 12, 2006, and had unsuccessfully tried to work as a counselor, a home improvement store worker, and a church janitor. (Tr. 24-29)

Plaintiff further testified that he was unable to work due to exhaustion and fatigue.  He was unable to perform any repetitive activities such as lifting or walking.  In addition, Plaintiff stated that he had pain due to arthritis and Gout.  He opined that he could walk from one room to the other before becoming worn out.  In terms of time, Plaintiff stated that he could only walk 3 to 4 minutes before needing to sit down.  He could stand up for up to 5 minutes.  Plaintiff further testified that he had difficulty sitting because he has poor circulation in his hips.  He explained that he had trouble going to church because he could not sit in the pews without needing to get up and walk around to improve the circulation in his hips and legs.  The poor circulation caused his ankles to swell. (Tr. 29-31)

In addition, Plaintiff stated that he could lift only a gallon of milk. He attributed it to his fingers cramping due to dehydration. Plaintiff also had arthritis and Gout. The arthritis was in his feet, ankles, knees, hips, and elbows. Ibuprofen provided relief. Plaintiff had not received any mental health treatment, although he was offered medication and refused. He regularly took medication for his blood pressure. Plaintiff previously had aortic valve replacement surgery, necessitating the use of blood pressure medicine. (Tr. 31-33)

During the day, Plaintiff and his wife woke up around 4. Plaintiff stayed in bed while his wife got ready for work. Plaintiff did not do anything while his wife was away. On Wednesdays, Plaintiff went to the church to sit and talk to homeless people. Otherwise, he did not cook or do anything around the house until his wife returned from work. Plaintiff went shopping with his wife on the weekends. He did not walk through the stores but sat and talked with other patrons. With regard to income, Plaintiff received $2,800.00 in retirement benefits from Chrysler per month. (Tr. 33-35)

Plaintiff's attorney next examined Plaintiff, who testified that he stayed in bed about 6 hours in a day. With regard to chores, Plaintiff only emptied the trash cans in the house and rolled out the trash bin once a week. Plaintiff went to bed after dinner at 7:00 p.m. Since his heart surgery, everything changed. For instance, Plaintiff testified that before the surgery he worked 12 hours a day, 7 days a week. He stated that now he could not even work a basic sit-down job eight hours a day, five days a week, 50 weeks a year. Plaintiff stated that if he had the stamina to work, he would. (Tr. 35-37)

A Vocational Expert (VE), Delores Gonzales, also testified at the hearing. Ms. Gonzales asked Plaintiff about his previous work experience as an electrician. He stated that 5 days a week he sat in the control room. The other 2 days, Plaintiff worked on the construction crew. Ms. Gonzales

3

then classified Plaintiff's past work as an automotive electrician, as it is usually performed, as light skilled work. However, the work as actually performed by the Plaintiff during the 5 days a week was sedentary. Further, Plaintiff's work as an assembler was classified as medium unskilled. (Tr. 37-41)

The ALJ then asked the VE hypothetical questions to determine whether Plaintiff could perform work. The ALJ asked the VE to consider an individual of the Plaintiff's age, education level, and past work experience. The VE was to assume the individual could perform light exertional level work but was limited to occasionally climbing ramps and stairs; never climbing ropes, ladders, and scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling. In addition, the individual needed to avoid concentrated exposure to unprotected heights and hazardous machinery. In response to the ALJ's question whether the individual could perform the Plaintiff's past relevant work, the VE answered that such individual could perform that work as defined or performed in the national economy. (Tr. 41)

The ALJ's second hypothetical asked the VE to assume the same nonexertional limitations with the additional limitation of no more than sedentary exertional level work. The VE responded that the individual could not perform Plaintiff's past relevant work as usually performed in the national economy but could perform that work as Plaintiff actually performed it. Finally, the ALJ added the need for occasional unscheduled disruptions. The VE stated that the individual could not perform Plaintiff's past relevant work. In addition, no other jobs in the national or regional economy existed which the individual could perform. (Tr. 41-42)

Plaintiff's attorney also questioned the VE during the hearing. The attorney asked the VE to assume an individual of Plaintiff's age, education, and past work and to also assume the individual is unable to maintain attention and concentration to sufficiently complete tasks up to two-thirds of

4

the work day. In response, the VE testified that the individual could not perform Plaintiff's past job or any other jobs in the national economy. In addition, if the individual was unable to maintain reliable attendance and would miss work more than 2 days a month, the individual would not be able to perform Plaintiff's past relevant work as normally performed in the work place. The VE noted, however, that Chrysler had a very liberal sick leave policy. (Tr. 42-43)

On October 26, 2006, Plaintiff completed a Function Report – Adult. Plaintiff reported that he had no problems with personal care. He was able to prepare sandwiches and frozen dinners daily. Plaintiff further stated that he could not perform any indoor or outdoor chores because he had no energy. Plaintiff went outside daily and was able to drive. He also shopped for food once a week for about an hour. His hobbies included watching TV all day. He talked on the phone and attended church. Plaintiff reported that his condition affected his ability to lift, squat, bend, stand, reach walk, kneel, stair climb, remember, complete tasks, concentrate, understand, follow instructions, use hands, and get along with others. He opined that he could walk a mile before needing to rest. He was able to finish what he started, follow written and spoken instructions, and get along with authority figures. However, he did not handle stress or changes in routine well. (Tr. 113-20)

## II.  Medical Evidence

On February 27, 2006, Plaintiff was admitted to the hospital after reporting 3 days of chest pressure and marked exhaustion with minimal exertion. Cardiac catheterization revealed severe aortic insufficiency. He was discharged on March 2, 2006 in stable condition. Dr. James Knight noted that Plaintiff would be readmitted for aortic valve replacement surgery after Plaintiff underwent teeth cleaning. (Tr. 227, 256)

On March 16, 2006, Dr. Hendrick Barner reevaluated Plaintiff. Dr. Barner noted that Plaintiff

5

had been advised 3 years earlier to undergo aortic valve replacement surgery, but Plaintiff declined. During the examination, Plaintiff indicated that he wanted to proceed with the surgery, which was scheduled for March 20, 2006. Dr. Barner assessed aortic insufficiency, anemia of uncertain etiology, hypertension, morbid obesity, and a history of cigarette usage. (Tr. 154-156)

Plaintiff underwent aortic valve replacement surgery on March 20, 2006. He was released on March 24 with good activity levels. Dr. Barner prescribed medications and advised Plaintiff to return to Dr. Williams in 4 days and Dr. Barner in 3 weeks. (Tr. 152, 157-59, 200-01)

Plaintiff had follow-up appointments with Dr. Knight in May and June of 2006. (Tr. 196, 271) On March 31, 2006, Dr. Knight issued a Certificate to Return to Work indicating that Plaintiff could return to work on May 8, 2006. (Tr. 207) Plaintiff did not seek further treatment from Dr. Knight until March 26, 2007. (Tr. 271)

Dr. Knight completed a functional capacity assessment form on April 30, 2007. Dr. Knight classified Plaintiff's functional capacity as Class III, which is defined as, "[p]atients with cardiac disease resulting in **marked limitation of physical activity**. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain." Dr. Knight further noted objective evidence of moderately severe cardiovascular disease. Dr. Knight rated Plaintiff's fatigue as moderately severe, which severely affected his ability to function. Dr. Knight opined that Plaintiff needed to alter his daily activities to avoid becoming fatigued and that fatigue frequently interfered with Plaintiff's ability to maintain attention and concentration to sufficiently complete tasks in a timely manner. In addition, he opined that Plaintiff would be absent from work more than 2 days per month. With regard to pain, Dr. Knight rated Plaintiff's pain as moderately severe and noted that the pain would frequently interfere with Plaintiff's ability to maintain attention and concentration to sufficiently

6

complete tasks in a timely manner. Pain would also cause Plaintiff to miss work more than 2 days a month. (Tr. 268-70)

On June 4, 2007, Plaintiff returned to Dr. Knight. Plaintiff weighed 310 pounds, and his blood pressure was 140/82. On August 6, 2007, Plaintiff weighed 304 pounds, and his blood pressure was within normal limits at 126/70. (Tr. 267)

On September 10, 2007, Dr. Knight noted that Plaintiff's symptoms and limitations remained the same as the April 30, 2007 report. (Tr. 266) Plaintiff returned to Dr. Knight on November 5, 2007 for a routine 3-month visit. Plaintiff reported that he had not taken his blood pressure medication for 2 days. He also complained that his feet, hip, and knee hurt. (Tr. 276)

On February 4, 2008, Plaintiff complained of leg pain. His weight was 311 pounds, and his blood pressure was within normal limits at 134/70. Plaintiff returned to Dr. Knight on February 11, 2008, complaining of extreme leg pain. Dr. Knight recommended a doppler test, which revealed minimal PAD (peripheral artery disease). (Tr. 275) On March 18, 2008, Dr. Knight reported that Plaintiff's symptoms and limitations remained the same as indicated on the April 30, 2007 form. (Tr. 273)

Plaintiff returned to Dr. Knight on March 28, 2008 and complained of left foot and ankle swelling for 2 weeks. Plaintiff felt fine on April 14, 2008 with no problems or concerns. (Tr. 274)

### IV. The ALJ's Determination

In a decision dated October 7, 2008, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2012. Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 12, 2006. The ALJ further determined that Plaintiff had the severe impairments of a history of aortic valve replacement,

7

hypertension, and obesity. However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-17)

Further, the ALJ carefully considered the record and found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work except that he should never climb ropes, ladders, and scaffolds. In addition, Plaintiff was limited to no more than occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. Further, Plaintiff needed to avoid concentrated exposure to industrial hazards and unprotected heights. The ALJ also noted that he considered Plaintiff's obesity in making the RFC determination. (Tr. 17)

The ALJ discussed Plaintiff's testimony, including his past work experience and his reported symptoms and limitations. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but that his statements regarding the intensity, persistence, and limiting effects were not credible to the extent they were inconsistent with the RFC assessment. The ALJ explained that the evidence in the record did not support the allegations of a severe and debilitating impairment. Instead, while the ailments were troublesome, they did not impose significant limitations that would preclude sustained competitive employment. The ALJ noted the lack of medical evidence supporting Plaintiff's claim, observing that treatment notes reflected no more than routine follow-up visits with no evidence of worsening. Indeed, Plaintiff had recently reported feeling fine with no problems or concerns. The ALJ found this evidence inconsistent with Plaintiff's claims that he was unable to do anything. (Tr. 17-18)

The ALJ further found that the treatment notes from Plaintiff's treating physician, Dr. Knight, failed to reflect any significant medical problems justifying the limitations suggested in Dr. Knight's

Medical Source Statement. Instead, the ALJ determined that these limitations were not consistent or supported by the medical evidence such that he did not afford Dr. Knight's opinions controlling weight. The ALJ did, however, consider the opinions in determining Plaintiff's RFC. (Tr. 18)

The ALJ found that Plaintiff was capable of performing his past relevant work as a control room operator, noting that such work did not require the performance of work-related activities precluded by Plaintiff's RFC. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 12, 2006 through the date of the decision. (Tr. 19)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that he is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable

mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty

of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## VI. Discussion

Plaintiff raises two arguments in his Brief in Support of the Complaint. First, he argues that the ALJ erred in "dissecting Mr. Ward's past work into a 'sedentary' component and a 'light' component, and finding that Mr. Ward could return to the 'sedentary' component of his past relevant work. Second, Plaintiff asserts that the ALJ erred in finding that he could perform sedentary work in light of evidence demonstrating that Plaintiff could not perform sustained work activities. The Defendant maintains that the ALJ properly evaluated Plaintiff's credibility and the medical opinions contained in the record. In addition, the Defendant argues that the ALJ properly evaluated Plaintiff's RFC and concluded that he could perform his past relevant work as a control room operator. The undersigned finds that substantial evidence supports the ALJ's determination.

In accordance with SSR 82-61, the ALJ determined that Plaintiff retained the capacity "to

---

[1] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

11

perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it."[2] SSR 82-61, 1982 WL 31387, at *2 (Soc. Sec. Admin. 1982). If a claimant has such an RFC, the ALJ should find that claimant not disabled. Id. Plaintiff described his position as a control room operator as sedentary, which description fell within the ALJ's RFC determination. Specifically, the Plaintiff explained that his previous duties required him to sit in the control room 5 days a week. (Tr. 38) In addition, the ALJ noted that Plaintiff's application indicated that he did not usually lift or carry objects and that the heaviest weight he lifted frequently was 10 pounds. (Tr. 39-40) While his position was classified as light skilled under the Dictionary of Occupational Titles, the job as he actually performed it was classified as sedentary. (Tr. 40) The VE specifically stated that even with non-exertional limitations and a limitation of sedentary work only, Plaintiff could perform his past relevant work as he described it. (Tr. 40-41) Thus, the ALJ did not err in determining that Plaintiff could perform his past relevant work as a control room operator.

Further, the undersigned finds that the ALJ properly discredited Plaintiff's allegations of disabling impairments and found that the credible impairments did not preclude him from performing work at the sedentary level. With regard to residual functional capacity, "a disability claimant has the burden to establish her RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting

---

[2] Although Plaintiff's attorney maintains that the ALJ assessed whether Plaintiff could perform his past relevant work based on a broad, generic occupational classification of his control room operator job, the record belies this argument. The ALJ specifically stated that his determination was based upon Plaintiff's "past relevant work as a control room operator . . . as actually performed by the [Plaintiff]." (Tr. 19)

Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

First, the ALJ assessed the inconsistencies between the medical evidence and Plaintiff's allegations. While an ALJ may not discredit a plaintiff's subjective allegations of pain solely because the allegations are not supported by objective medical evidence, an ALJ can make a factual determination that the subjective complaints are not credible in light of contrary objective medical evidence. Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citations omitted)). Here, the ALJ noted Plaintiff's testimony regarding the limitations resulting from his alleged impairments,[3] which indicated that Plaintiff did nothing during the day. However, the ALJ found Plaintiff's allegations of significant limitations of daily activities to be not credible. Plaintiff reported doing a few household chores. He also went to church once a week and went shopping with his wife. Further, Plaintiff indicated the ability to make meals and walk a mile in his Function Report. (Tr. 113-20) While Plaintiff's daily activities demonstrate some limitations, "the ALJ was not required to believe all of [his] assertions concerning those daily activities." Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996).

The ALJ noted inconsistencies in the record that detracted from Plaintiff's credibility. For instance, Plaintiff had not been hospitalized since his surgery in March of 2006. In addition, the treatment notes did not indicate anything other than routine follow-up visits. Indeed, Plaintiff's aortic insufficiency improved and did not result in medical interventions or worsening. Further, although Plaintiff's treating physician, Dr. Knight, reported that Plaintiff's cardiac disease resulted in marked limitation of physical activity and fatigue which severely affected his ability to function, the ALJ found

---

[3] Although Plaintiff also testified to recent diagnoses of arthritis and gout, the ALJ noted that Plaintiff did not submit any supporting medical evidence. Thus, the ALJ found that these alleged impairments were not medically determinable. (Tr. 16-17)

this report to be inconsistent with Dr. Knight's treatment notes. For example, shortly after Plaintiff's surgery, Dr. Knight indicated that Plaintiff could return to work on May 8, 2006. Plaintiff did not return to Dr. Knight for nearly a year, at which time treatment notes reflected normal blood pressure and no complaints of chest pain or fatigue.

"A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). However, "an ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." Swarnes v. Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

Here, the ALJ adequately discounted Dr. Knight's opinions based on the fact that they were inconsistent with the record as a whole. The record contains only Dr. Knight's conclusory opinion regarding Plaintiff's Functional Capacity with no objective medical support. As properly stated by the ALJ, the limitations imposed by Dr. Knight were "not consistent or supported by the longitudinal evidence." (Tr. 18) Thus, the ALJ was not obligated to give substantial weight to Dr. Knight, and, instead, the ALJ appropriately gave little weight to Dr. Knight's vague and conclusory statements. Swarnes v. Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

14

In short, the ALJ properly assessed Plaintiff's subjective complaints and disbelieved his subjective reports based on inconsistencies in the record. See Eichelberger v. Barnhart, 390 F.3d 584, 589-90 (8th Cir. 2004) (holding that an ALJ may disbelieve subjective complaints of pain because of inherent inconsistencies and that the ALJ has the statutory duty in the first instance to assess a claimant's credibility). Further, the ALJ appropriately gave little weight to Dr. Knight's Functional Capacity Assessment based upon the lack of supporting objective medical evidence. See Owen v. Atrue, 551 F.3d 792, 799 (8th Cir. 2008) (stating that an ALJ may discount a treating physician's opinions expressed in an RFC assessment for due to inconsistencies). The ALJ then properly formulated Plaintiff's RFC in light of the evidence presented by the Plaintiff, including Dr. Knight's treatment notes. As previously stated, these notes, along with Plaintiff's description of his activities, demonstrated that Plaintiff possessed the RFC to perform sedentary work. Thus, the undersigned finds that the ALJ properly determined Plaintiff's RFC in this case, and substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2011.